The final case on for argument today is United States v. Ventura. Good morning, Your Honors, and may it please the Court, my name is Turner Buford. I represent the United States in this appeal and in the case before the District Court. The government in this case is seeking the reversal of an order issued by the District Court dismissing, with prejudice, the indictment against the defendant which charged him with attempting illegally to reenter the United States after having previously been deported as an aggravated felon. The District Court's order issued after the defendant was released on bond in the criminal case over the government's objection, but was subsequently detained by ICE authorities pursuant to an immigration detainer. Upon taking custody of the defendant, ICE promptly commenced administrative proceedings to determine the admissibility of the defendant to the United States, who, prior to his arrest, had been stopped at JFK Airport in possession of only an expired— What is it that you want? We would like, Your Honor, for an order from this Court reversing the District Court's order and allowing the criminal case to proceed. The indictment in this case was dismissed with prejudice. We believe that the indictment in the criminal case can proceed consistent with the Bail Reform Act given the progress of the administrative proceedings that are underway, which would afford the government to pursue the criminal case and the administrative proceedings simultaneously. So if you disagreed with the judge's decision on bail, why didn't you seek relief here? Your Honor, we thought that we disagreed with the court's decision on bail, but we elected not to seek relief in this court. You'd like to not seek relief in this court, okay. Well, we certainly disagreed with it, but our larger issue, Your Honor, is with the continuance of the criminal case. Okay, but you . . . yes. But the reason you can't continue with the criminal case, according to the district judge, is you violated his order. Okay. Now, it seems he issues an order saying, person, you want to be released on bail, put up this bond. Puts up the bond, and then he gets seized. Why would he put up a bond? Well, in this case, the district court did not require the defendant to actually post a bond. All right. In normal life. In normal life. In some other case. As a matter of how these things should proceed. District court has a bail hearing. As condition, he says, you put up a bond. The guy puts up the bond. He's out on bail, and then you nab him. Okay. You're both part of the government. In fact, are you all part of DOJ? No. One part is part of Homeland Security. You had ten days, right, under the statute to do something? Your Honor, I certainly took custody less than 24 hours after the defendant was released on bail in the criminal case. I see. And the detainer was in place from almost day one. From the time of the arrest, yes, Your Honor. It was lodged initially when the defendant was referred for criminal prosecution. But the person was paroled in, just so I'm right? That's correct, Your Honor. Paroled in for the purpose of criminal prosecution. So I've got two questions. First, currently he is on bail. Currently he is on bail in the criminal case. Well, there is no criminal case. He's on bail in the immigration proceeding, yes, Your Honor. There was an immigration judge set a bond of $15,000. That was in December of 2017. It's my understanding that the, and this is not part of the record other than in our brief, it's my understanding that the defendant posted that $15,000 and is now released on condition. In the administrative proceeding. So he is not currently detained. He is not currently detained, Your Honor. My second question is, let's assume that the government is right with respect to the issue of parallel administrative and criminal proceedings. There is also the possibility that Judge Irizarry could have found that the detention was pretextual or in bad faith. Is that correct? I think that's right, Your Honor. I think that if there could be situations in which the court could conclude that either ICE's detention for purposes of the administrative proceeding was not justified by statute. Alternatively, there could be a finding, I think, where the district court could conclude that the detention in the administrative proceeding or the administrative proceeding had reached the point at which there was nothing left to do but remove the defendant. And if for some reason. Or that it was vindictive, for example. Potentially vindictive, Your Honor. You see that in other contexts with parallel proceedings in the securities world. But there was no finding, one way or the other, of pretext or bad faith here. Is that correct? Our read of the district court's decision, Judge, is that it got no further than the Bail Reform Act itself, holding that once the defendant is released in the criminal case, because it's all one executive, he cannot be taken into custody for any purpose. Would the government agree? Would you agree? You are the government. That if there were a legitimate finding of bad faith, people could quibble about the legitimacy of someone, but a legitimate finding, a pretext for bad faith, that that would be a reason to do what Judge Irizarry did, ultimately did, in this case? I think that could justify a finding that if. If that's true, then if we agree with you, it's a big if, with respect to the legitimacy of the parallel proceedings, why shouldn't we remand this back to Judge Irizarry to, in the first instance, make that determination? I think it would be fair for the court to do that, to remand. If the court were to find that the Bail Reform Act is not a justification for the court's dismissal order, because it doesn't necessarily prevent parallel proceedings from occurring. In fact, our reason seems to explicitly contemplate that parallel proceedings could continue, then I think what I think we would ask for this court is an order reversing the district court's decision, and then if the district court, on its own, elected to revisit the issue and make a separate justification . . . You're not satisfied with just a remand to make that determination? You want a full reversal? Well, it's not clear to me that the district court contemplated bad faith on the part of the government. Of course, she didn't have to. She thought you can't do these parallel proceedings. But I suspect counsel would raise it promptly upon remand, in which case the district court would have an opportunity to address that issue as a basis for . . . But there are a range of sanctions that can be imposed on the government for bad behavior, if you will, or sanctionable behavior that don't contemplate the dismissal of an indictment. That's correct, Your Honor. And I think that if you read the district court cases that have confronted this issue, there's a flavor of concern, valid concern, for use of the court's resources and protection of its own docket if there's going to be a situation in which ICE is going to remove promptly a person who's a criminal defendant. And I think judges rightly ask, well, why should we devote time to this? I think it varies case by case. In this particular case, the pace of the administrative proceedings and the fact that both proceedings could continue, and under the law, there's no reason we think why they can't under this circumstance. If . . . Just explain to me what happened here. The judge can seize somebody who is a non-citizen and keep them for ten days and notify ICE, we've got this person, and ICE can take them into custody or not. And so in this case, there was a notice? There was no notice specifically, Your Honor. This is the, I don't want to say rare, but the case where ICE is the sponsoring agency for the prosecution and also the agency that has the independent statutory basis to detain the defendant for administrative purposes. So ICE knows about this case because it's the one who told the Justice Department, prosecute this guy. And certainly at the bail hearing in August of last year, it was . . . and the agency was known to the Magistrate Judge Pohorelsky and Chief Judge Irizarry that there was an immigration detainer, and by the time Chief Judge Irizarry heard the appeal, ICE had in fact already taken custody of the defendant. Okay. But he's paroled for ninety days. So what happened to that ninety days? The ninety days expired of its own force. ICE could have renewed the parole, but elected not to. Okay. It seized him after the ninety days expired, the parole expired. That's correct, Your Honor. Okay. He was originally arrested in April, and I think parole was accomplished that same day for ninety days. And then as a matter of law, even if the ninety days had not expired, when the defendant was served with a notice to appear in the administrative proceeding, which happened on August 15th of 2017, that notice to appear has the effect of terminating the parole, even if it were still in effect, is my understanding. In the administrative process. In the administrative process. That's correct, Your Honor. But really the central question before us with respect to the first level issue is whether you can even have these parallel, tandem parallel criminal and administrative proceedings, really with a detainer. That's the issue. I think that's correct, Your Honor. I think that the, again, the Bail Reform Act seems to explicitly contemplate, if not endorse, the idea that ICE could take custody during this ten-day window certainly doesn't prohibit ICE from taking custody, in our read, after the ten-day window expires, provided it's in furtherance of bona fide administrative proceedings. To the extent there are concerns about judicial economy or vindictiveness, I think those are separate issues that are freight that the Bail Reform Act shouldn't have to bear. To the extent the Bail Reform Act is read as foreclosing detention in any other context for any other reason, we just think that's reading it too far. Thank you. You've reserved two minutes for rebuttal, Mr. Buford. Thank you, Your Honor. Mr. Wheeler. It's still morning, so good morning. Good morning, Your Honors. May it please the Court, Isaac Wheeler of the Federal Defenders of New York for the Appellee Saba Rosario Ventura. We agree with the government that this case is a little bit rare or represents a narrow question arising from an unusual situation. When a reentry defendant is granted bail, which is comparatively rare, and is the beneficiary of a duly issued release order under the Bail Reform Act that the government has unsuccessfully appealed to the district court, and when he is then taken into immigration custody that is elective, not mandatory, and when, most unusually of all, he is then subjected to a removal proceeding which is more processed than he is due because he's susceptible to expedited removal forthwith with the stroke of a pen. Whether under those unusual circumstances the district court was correct to find that the purpose of ICE custody was not, as the government maintains, a garden variety removal proceeding like they would have done in any other case, but was in fact custody in order to secure the defendant's detention pending trial in derogation of the court's order. That goes to my series of questions about pretexts and bad faith. Did Chief Judge Irizarry here make a determination that what ICE did in connection with pursuing its detainer was pretextual or in bad faith or vindictive, and if she did not do that, just as a follow-up, isn't the appropriate answer, and I know you've got a whole big argument about parallel proceedings, but isn't the appropriate response to remand, and if she wants to do that, she can, based on the facts available to her? Yes, Judge. I think Chief Judge Irizarry did make a finding about pretext, which I believe is . . . Where is that? That's what I'm . . . Yes, Judge, at page 6 of the court's November 3rd order, which is page 69 of the government's appendix, and I think it's important to distinguish between pretext on the one hand and bad faith or vindictiveness on the other. However you want to describe it, but bad faith sounds pretty bad, vindictiveness sounds pretty bad. Right, and I think the reason I want to draw that distinction is because both the district court here and the cases on which she was heavily relying, the Trujillo-Alvarez decision from the District of Oregon and Judge Caproni's decision in the Southern District here in the Galitza case, make the standard, is the ICE custody pretextual, meaning is it designed not to result in expulsion? So I've read 69, I guess page 6, and this seems to relate more to whether or not . . . this seems to relate to the first order issue to me, that is whether or not in these unusual circumstances you can have parallel proceedings. I think the language I would focus on, Your Honor, is she finds that the government's actions, taking the executive as one unitary whole, are an affront to the Bail Reform Act and represent in the second paragraph a challenge to the district court's bond determination outside the rules of federal criminal procedure. But if we are to follow that, Mr. Wheeler, it seems to me then we have to say that somehow when Congress wrote the Bail Reform Act, it intended essentially to supersede in a way the Immigration Act, and our job . . . I mean, why can't we . . . why is it impossible for us to reconcile those two acts? Judge, I don't believe this case actually requires the court to make a finding like that. As the government . . . It would be a holding, I think, but . . . A holding, excuse me. As the government concedes . . . This was not a case where the government chose to invoke the 3142D procedure. And in addition, this is not a case . . . And I think this is critical. This is not a case where detention under the Immigration Act is mandatory. The government has maintained it was all along but has never successfully or satisfactorily addressed the point which we raised below and raised . . . I don't know that it's . . . I don't know that I heard that detention was mandatory. There's . . . What I've heard and read or the way that I've understood it is that there's a significant amount of discretion vested in . . . with ICE in connection with detention decisions. And I'm just very focused on whether or not in this case there's a record predicate to determine that the discretion in this case was bad faith. Yes, Your Honor, I'll address that. The government argued below and at page 15 in its opening brief, at page 10 in its reply brief, it does say that detention is mandated by the INA. That is incorrect. Someone in Mr. Ventura's posture can be paroled out of immigration custody even when they're in proceedings before an immigration judge. And I think it's material that the government could have but chose not to release him when they resumed custody. I mean, the facts matter here. They could have put Mr. Ventura back on the next plane when he first showed up. The record is amply . . . Only entry after deportation, however. Right. Within three hours, they had reached . . . four hours. They had reached an accord with the U.S. Attorney's Office to parole him for prosecution, as Your Honor noted, instead. When he posted bail and they resumed custody, they could also have, if their intent was truly to effectuate his removal, they could have deported him then. They did not. Instead, they did something quite unusual for DHS, and it's not just my say-so. The Supreme Court in Jennings v. Rodriguez says it's unusual. They took an arriving alien with no entitlement to an immigration judge proceeding and gave him a proceeding in immigration court, although he'd already been ordered deported. They were slow-walking the removal case, and that's just manifest. And in addition to slow-walking the removal case, they elected to detain him, although the regulation gives them the authority to parole him. So when the government was presented with this choice by the district court, obey the Bail Reform Act order or terminate the prosecution, they elected to disobey the Bail Reform Act order, and as Judge Rustani noted, did not avail themselves of their ability to appeal the bail determination they didn't like to this court. So I think what Judge Irizarry found— If we disagreed with you, let's just assume this for a second, that parallel criminal administrative proceedings in this context, even in this unusual context, are improper, then would we be able to characterize what the government did on the administrative side as improper, as a violation of the Bail Reform Act? Judge, yes. I mean— Categorically improper. Right. Contimacy and bad faith are not the same thing. When the government has the ability to enlarge him under the terms set by the district court, but refuses to do so, and I think it's important to note in this regard, that in other cases, as we noted in the brief, that is what they did in response to materially similar orders. In Judge Caproni's case, ICE released a reentry defendant. In the Lopez case that came after this one, the case took a different turn, but initially, as we pointed out in page 15 of the special appendix, the government submitted a letter saying ICE agrees in response to a materially identical order to release the defendant. So when the government demonstrates that it can do that, but does not do that, the district court is justified in finding that the purpose of ICE detention is not to effectuate his removal. That could have been effectuated the day he posted bail, but is in fact to maintain him in custody pending trial. And I think— That is a finding of pretext. Yes. Not bad faith, but pretext. And, you know, the government can act irrationally without acting in bad faith, right? It has the power to obey, as the government put it in its own brief, to fully commit to the criminal prosecution by following the district court's order, or it has the power to abandon prosecution and effectuate removal, which it gave up multiple times in this case. I'm not sure that I see on page 6 a finding of pretext, that you can disengage from a determination legally that parallel proceedings are improper. Judge, I think parallel proceedings are perfectly proper so long as someone is not detained by ICE for the parallel proceedings. We don't contend, although I agree there's some ambiguous language in this decision and perhaps even in our brief, that we do not contend that ICE is powerless to initiate a removal proceeding against someone once they have a pending federal criminal case. What they can't do is, if the district court has duly determined bail under the BRA, they can't, while the criminal prosecution remains pending, detain that person. That's a much more specific argument. That's right, because the removal proceeding itself does not violate Mr. Ventura's rights under the Bail Reform Act, and what he is complaining about here is a violation of the benefit of the release order. What the government is prohibited from doing is using ICE detention as a heads-I-win, tails-you-lose substitute for an order from a magistrate judge saying no bail or no bond. So I think you're agreeing with me in some way that we're talking about pretext. Yes, Judge. All right. And then the question is, did Chief Judge Irizarry make a finding that I'm comfortable describing as a finding of pretext? Set aside bad faith for a second. She could make that determination, but that's the question. Yes, she did. No, no, is that the question, really, fundamentally? Yes. I think if I understand Your Honor correctly, and we're speaking about pretext, meaning the purpose of ICE custody is not actually to effectuate removal, but is actually to keep someone locked up pending prosecution. Unrelated to its administrative needs, it's really to do something in the criminal case or for some other. Right. And what I think justifies, what I think evidences that finding is that she found, consistent with Trujillo, consistent with Galitza, that the purpose of ICE custody here was to disagree with the court's bail determination, to act in violation of it. Administrative custody that actually was headed towards removal would not be pretextual administrative custody. Do you think that that's enough under Bertrand v. Sava and the line of cases for us to affirm? Yes, I think the judge had power to enforce her own order and actually chose a somewhat narrowly tailored remedy here, which was to leave, I see my time has expired, but just to complete. Keep on going, because I've got some questions for you, too. Chose a relatively narrowly tailored remedy in the sense that she left it open to the government, either to effectuate his removal, as they had done in a previous case and have continued to do, or to forego the prosecution. And if I may, could they, I mean, they could go through this prosecution, assuming your client gets convicted, serves time or not, because he can be removed while he's serving time, and then they proceed with removal, right? Yes, Your Honor, there is no speedy trial act for the INA. And the bulk of our brief is devoted to showing how, in many places, the INA appears to contemplate that as the normal and rational. So why can't, when could the government, in the course of the process that I just suggested, if you have it in mind still, when could they have actually placed a detainer on him? They could certainly place it on him when he's sentenced and put over an MCC or wherever he would be serving his time, right? Any time before then? Convicted by the jury, could the government have put a detainer on him at that point? Well, the detainer, as a notice to the criminal custodian to simply not release him to the street without notifying ICE, we're not objecting to. We got dibs on this guy when he gets out. And what routinely happens in the Eastern District in drug courier cases, which we also do not object to, is someone is stopped at the airport, the decision is made not to remove them but to parole them for prosecution. A detainer is lodged. And if that person does, as accused couriers frequently do, make bail, the detainer is acted on to the limited extent that CBP transiently comes and holds them in custody for so long as it takes to get from MDC to the airport and then gives them a letter saying, come back to us when the criminal case is disposed or check in with us in two months, right? So they continue their parole. But they're remote? No. In other words, they do what we... They bail and they're skipping the country. I apologize. They do what we contemplate as the normal course of events here. They parole someone for prosecution. If they make bail, they continue that parole status, perhaps with check-ins every couple weeks or an appointment to keep them apprised of the status of the criminal case. And only upon a disposition of the criminal case are they then subject either to expedited removal or a removal proceeding or what have you. Why couldn't ICE, whoever, pick them up at the point, detain them, get them in front of an ALJ, get them bail on the administrative process, which as I understand it, but correct me if I'm wrong, is what happened here? Well, yes, Judge. Your guy's out on bail, right? Two responses to that, yes. First, they fought that outcome tooth and claw, and it hangs by a thread in this case because the basis on which he got a bond hearing... An immigration judge doesn't have jurisdiction to give someone in Mr. Ventura's position a bond. The way he got a bond hearing was under this court's decision in Laura v. Shanahan, which is arguably abrogated by a recent Supreme Court case. So this court just remanded that back to the district court in July, and that may well cease to be the case, right, as soon as the district court attends to it. So the landscape has pretty significantly changed in the government's favor in one sense. Right. And the arguments they pressed below about why he was disentitled to immigration release have prevailed at the Supreme Court. In addition, and I think this goes to Your Honor's question, the way he got out of immigration custody, as the government correctly noted, this is not in the record, but there's no dispute, he had the bond hearing in December. He posted bond in March. Why did it take four months? Because immigration bond is cash bond. His wife had to borrow money against her 401K to come up with the $15,000 to give to ICE, and that is a significant additional restraint on his liberty that the district court did not find justified under the BRA. He was, as the government noted, released on an unsecured bond of $25,000 signed by his wife and sons and subject to other conditions, including electronic monitoring and home confinement. Why can't an agency which has separate statutory and enforcement authority to deal with folks who have done what your client is alleged to have done? I'm just having a problem why that is not a separate proceeding. I mean, I live up on a border state, too. I guess we're all on border states here. It seems to me you can parallel proceedings with their own mechanisms within them. I'm having a hard time seeing why those should be precluded, and that's what I see Judge Irizarry's decision carried to its logical extension doing here. Well, I think I agree, Your Honor, that Judge Irizarry's reasoning applied to other sets of facts might raise a more stark conflict between an asserted mandate to detain someone and a court's release order, but this isn't that case. They weren't required to detain him at all, and I don't think this creates any problem. They're not required, but the government's not required to request bond in a case. I mean, he could be running around out there on no bond. That's right, but in this case where they opposed his release and then used elective, where ICE, as the government notes, didn't just find out about Mr. Ventura because he happened to be arrested on a drug case. They brought this case in close coordination with the U.S. Attorney's Office. He wasn't indicted for four months because defense counsel below was negotiating with the government about whether they might want to dismiss these charges because of legal infirmity, so they really made about the most deliberate decision one can make to prosecute in lieu of immediately removing him. I think that narrows the case to a fairly unusual situation. Okay, so back to what I think I heard Judge Loyer asking, but I'm going to ask it again with apologies if I am. What's the rule we articulate? That whereas here a district court has made a finding justified on the circumstances before her that the purpose of ICE custody was not to effectuate removal but to hold Mr. Ventura pending prosecution, that she acted within her supervisory authority to ask the government to either choose to forego the prosecution or effectuate his release. He having been released under the Bail Reform Act. Right. In other cases, the government has responded to identical orders by obeying the district court's bail order. In this case, they chose not to, and I think the district court acted appropriately to enforce her own order under those circumstances. The question, or at least the question that I've got here, is whether Chief Judge Irizarry in fact made it clear enough for us, that she found that the government was acting irrationally, pretextually, or in bad faith. I understand, Judge. May I respond briefly to that? I mean, I believe this court, even if it finds that the district court wasn't adequately clear about that, the circumstances that I've just outlined, namely a twice forewent expedited removal when they didn't have to . . . You want us to make that determination? I think . . . Because I think that there's an adequate record. But if I disagree with you, the correct route seems to me to be to remand and let her make it clearer. Right? Well, Your Honor, I do believe this court has in front of it an ample record to find that the finding was correct. I understand your argument. But yes, given that supposition. I mean, the last thing I would note in response to that, Judge, is just this was a zero to six month guideline case with a meritorious defense to removal that didn't get brought because the indictment was dismissed on other grounds. He spends an additional eight months in ICE custody over and above the four months that he was in criminal custody because of the government's, again, not necessarily bad faith, but contumacy. So further criminal proceedings are in some sense punitive to that extent. I understand that. But he's out on bond. You don't want to accelerate anything, it seems to me. And, you know, if there is a sense of some lack of clarity, why not get the clarity? Understanding that things have taken several turns over this period of time in this proceeding. Thank you, Your Honor. Thank you, Mr. Wheaton. Your Honor, although the parole power does permit the government to let someone into the country in Mr. Rosario Ventura's position, I think there's a clear statutory preference for detention when it comes to preference, if not command, for detention when it comes to inadmissible arriving aliens that are stopped at the border. And with respect to the question of pretext, I would just point the Court to a couple of facts in this record that here, as soon as the defendant was released on bond, ICE took custody. There was no delay. The defendant had not previously been released in any fashion, as was the case in the Galitza case. Administrative proceedings were scheduled. Hearings were being held in that case. And the defendant was in the custody of ICE, as opposed to, again, in Galitza where the defendant was ritted back into MDC and, as Judge Caproni noted, was in the same cell he had previously been held in. None of that is happening here. And I think for the Court to find, either this Court or for Chief Judge Rosario, to find that there had been a pretextual detention, you would have to find something in the nature of the ultimate goal of ICE was not to remove the defendant, but was rather simply to detain them for the purposes of the criminal case. There's no question that ICE could have sent him home on the next plane. It's also the case, though, that once the defendant is in administrative custody, to some extent the pace of the proceedings is not entirely exclusively up to ICE. If the defendant wanted to, as I understand it, he could withdraw the application for admission that he is deemed to have made when he arrived at the border and essentially consent to removal. The defendant hasn't done that. It says in our brief, by the way, that if he did that, the criminal case would not be a reason to defer the removal. And if it were, then the defendant would have the same motion they had previously, which is I'm now being held solely for the purpose of the criminal case and that can't happen because the district court set bond for me. But that's not what happened in this case, and as such we think the motion is premature. Just to give me some context here, he was removed, correct? And now he's back. Yes. And he thinks he has a case now to not be removed because he had a misdemeanor. But is that foregone because he didn't do this originally? No, it's my understanding, and this is not one of the transcripts that's appended to this record, but it's my understanding in a previous hearing before the district court that the defendant's position is it would be very difficult for him to contest the deportation from the Dominican Republic. So one way to view this is the defendant has presented himself at the border, essentially daring the government to indict him. If he's not indicted, he simply goes home on the next plane. If he is, and I'm now speaking more generally about other people who might be similarly situated, if you have a nonviolent criminal history, you're very likely to get bail, which means you would be allowed to come into the United States, live here indefinitely, litigate your 1326D motion. If you win, your immigration status is resolved favorably. If you lose, you're no worse off than you were before, admittedly with a criminal conviction, although low guideline range, and then you get deported in the same context. So the idea that the government is taking advantage of the defendant, I think, is in some tension with the actual scenario that happened here. Is there any chance that he'll be removed during the pendency of this case on appeal? There's always that chance, Your Honor. As I just said, there's a chance that the defendant could withdraw, essentially the application for . . . Right. Set that scenario aside. The next scheduled court date in the immigration proceeding is in October. It's my understanding the defendant has not even pled the notice to appear yet. I can't make any guarantees, but in discussion with ICE counsel, their estimate is that the removal proceeding on its current pace would be into 2020 before it would reach conclusion. But the defendant could, Mr. Ventura, could withdraw his application and essentially effectuate his own removal. My understanding is that's right, and it says in our brief that we wouldn't be able to stop that by virtue of the criminal case, which may or may not exist depending on what this court does. It's in suspension right now, right? That's right. Great. Thank you both. Thank you, Your Honor. Helpful arguments and certainly an interesting issue for me. So having concluded our calendar today, I'll ask the clerk please to adjourn court. Court is adjourned.